UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KATHLEEN GRIMALDI,                    :
                                      :CIVIL ACTION NO. 3:12-CV-2345
            Plaintiff,                :
                                      :(JUDGE RICHARD P. CONABOY)
            v.                        :
                                      :
BANK OF AMERICA,                      :
                                      :
            Defendant.                :
                                      :

_____

**MEMORANDUM**

Here we consider Defendant's Motion to Dismiss Plaintiff's

Complaint (Doc. 7).  Defendant FIA Card Services, stating it was

sued erroneously as Bank of America, moves for dismissal of

Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure

12(b)(6) and 9(b).  (Doc. 7 at 1.)  This motion is now fully

briefed and ripe for disposition.  For the reasons discussed below,

we conclude Defendant's motion is properly granted in part and

denied in part.

## I. Background

Plaintiff alleges that she and her husband, Philip V. Grimaldi

("Mr. Grimaldi"), each had an individual line of credit serviced by

Defendant at all pertinent times.  (Doc. 1-1 ¶¶ 3, 4.)  Mr.

Grimaldi opened his account (ending in 3807) in March of 2007 and

never failed to make a payment or made a late payment prior to his

death.  (Doc. 1-1 ¶¶ 6, 7.)

Mr. Grimaldi died on December 22, 2011.  (Doc. 1-1 ¶ 14.)  On

January 17, 2012, Plaintiff's daughter contacted Defendant to

advise of Mr. Grimaldi's death.  (Doc. 1-1 ¶ 9.)  At that time, Defendant told Plaintiff's daughter that, "contrary to all appearances and evidence," Plaintiff was also on the account with Mr. Grimaldi.  (Doc. 1-1 ¶ 9.)  During the same call, Plaintiff's daughter requested documentation to demonstrate Plaintiff's liability.  (Doc. 1-1 ¶ 10.)  This documentation was never received.  (*Id.*)

On February 1, 2012, Plaintiff made a payment on Mr. Grimaldi's account, claiming that she was "overwhelmed by grief" at the time.  (Doc. 1-1 ¶ 11.)  The statement was being mailed to Plaintiff's residence and addressed to the "Estate of Mr. Grimaldi."  (*Id.*)

On February 21, 2012, Plaintiff requested the original loan application related to Mr. Grimaldi's account from the Estate Department and Customer Service Department.  (Doc. 1-1 ¶ 12.)  Plaintiff was told that documentation would be provided in seven to ten days.  (*Id.*)  No documentation was provided.  (*Id.*)

The February 2012 statement was addressed directly to Plaintiff and not to the Estate of Mr. Grimaldi.  (Doc. 1-1 ¶ 13.)

On March 9, 2012, Plaintiff wrote to Defendant demanding the following: that Defendant cease and desist addressing correspondence to Plaintiff; that the interest, penalties and other charges stop accruing as of Mr. Grimaldi's date of death; that no action be taken to negatively impact Plaintiff's credit; and that

Plaintiff receive acknowledgment that the Estate of Mr. Grimaldi is insolvent and non-probatable and that there are no proceeds to settle the account on behalf of the Estate. (Doc. 1-1 ¶ 14.) Defendant responded to Plaintiff's correspondence on April 2, 2012, stating that the letter would be forwarded to the appropriate department. (Doc. 1-1 ¶ 15.) In another correspondence dated April 2, 2012, Defendant's Estate Department indicated that the case was expected to be resolved by May 17, 2012. (Doc. 1-1 ¶ 16.)

On April 11, 2012, Plaintiff sent additional correspondence to Defendant's Estate Department requesting the same information as the March 9, 2012, correspondence and reserving the right to have a court intervene. (Doc. 1-1 ¶ 17.)

On April 19, 2012, Defendant sent further correspondence to Plaintiff demanding payment on the disputed account. (Doc. 1-1 ¶ 18.) On April 25, 2012, additional correspondence was received from Defendant regarding disputing an individual charge made to an account along with the May statement in Plaintiff's name. (Doc. 1-1 ¶ 19.)

On June 8, 2012, Plaintiff's attorney sent correspondence to several addresses for Defendant requesting that Defendant cease and desist contacting Plaintiff. (Doc. 1-1 ¶ 20.) On the same date, Plaintiff received correspondence from Defendant stating that Defendant had closed a separate line of credit that had been extended to Plaintiff alone. (Doc. 1-1 ¶ 21.) Plaintiff also

asserts that Mr. Grimaldi's account "was added to the Plaintiff's credit report, as if it were her own, and that the failure to pay Mr. Grimaldi's account as it is disputed, and not reported as disputed to the credit bureaus has done substantial damage to the Plaintiff's otherwise flawless credit." (Doc. 1-1 ¶ 21.)

The parties exchanged additional correspondence in August and September 2012. (Doc. 1-1 ¶¶ 22-25.) In correspondence of August 27, 2012, sent to Plaintiff care of her attorney, regarding the information requested, Defendant sent "a screen shot of a data entry screen, showing Plaintiff's name, but no signature regarding the account." (Doc. 1-1 ¶ 22.) Defendant claimed this was "the best possible cop[y] of any documentation regarding the account." (*Id.*) As of the filing of this motion, Plaintiff has not received a signed copy of the original loan application related to Mr. Grimaldi's account, information Plaintiff requested to prove she is liable for the disputed debt. (Doc. 1-1 ¶ 25.)

Based on these alleged facts, Plaintiff filed this action in the Court of Common Pleas of Pike County, Pennsylvania, on October 17, 2012. (Doc. 1-1 at 3.) The Complaint contains the following seven counts: Count I - Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); Count II - Fraud; Count III - Breach of Implied Covenant of Good Faith and Fair Dealing; Count IV - Fair Credit Extension Uniformity Act ("FCEUA"); Count V - Fair Debt Collection Practices Act ("FDCPA"); Count VI - Negligent

Misrepresentation; Count VII - Negligent Infliction of Emotional Distress. (Doc. 1-1.)

Defendant filed a Notice of Removal (Doc. 1) in this Court on November 21, 2012. (Doc. 1.) Defendant filed the motion under consideration here, Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 7), on December 12, 2012. On the same date, Defendant filed a Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint. (Doc. 8.) Plaintiff filed her Memorandum of Law in Opposition to Defendant's Memorandum of Law Regarding Defendant's Motion to Dismiss (Doc. 11) on January 14, 2013. Defendant filed Reply Brief in Support of Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 12) on January 29, 2013, and a supplement to her supporting brief on February 1, 2013 (Doc. 13).

## II. Discussion

### A. *Motion to Dismiss Standard*

### 1.    Federal Rule of Civil Procedure 12(b)(6)

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

When reviewing a complaint pursuant to a defendant's motion to dismiss for failure to state a claim filed under Federal Rule of

5

Civil Procedure 12(b)(6), the court does so in the context of the requirement of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claims showing that the pleader is entitled to relief." The "short and plain statement" must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007). *Twombly* confirmed that more is required than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555 (citations omitted).

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'"

> *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550
> U.S. at 570). The Court emphasized that
> "only a complaint that states a plausible
> claim for relief survives a motion to
> dismiss." *Id.* at 1950.

*McTernan,* 577 F.3d at 530. *Iqbal* explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678.

*McTernan* discussed the effects of *Twombly* and *Iqbal* in detail

and provided a road map for district courts presented with a motion

to dismiss for failure to state a claim in a case filed just a week

before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.

2009).

> [D]istrict courts should conduct a two-part
> analysis. First, the factual and legal
> elements of a claim should be separated. The
> District Court must accept all of the
> complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. [*Iqbal*,
> 129 S. Ct. at 1949.] Second, a District
> Court must then determine whether the facts
> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief." *Id.* at 1950. In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief. A
> complaint has to "show" such an entitlement
> with its facts. *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )]. As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,

7

> 129 S. Ct. at 1949. This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common
> sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## 2. **Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

## B. *Defendant's Motion*

## 1. **Count I - Unfair Trade Practices and Consumer Protection Law ("UTPCPL")**

Defendant first argues that Count I, Plaintiff's claim under

8

the UTPCPL, fails because the Complaint does not sufficiently allege justifiable reliance by Plaintiff or that Plaintiff suffered an "ascertainable loss."  (Doc. 8 at 4.)  We disagree.

In her Complaint, Plaintiff asserts that Defendant violated the UTPCPL, 73 P.S. § 201-2, "by unfair and/or deceptive acts which caused confusion and misunderstanding of Plaintiff's options in regards to alleviating the stress of Philip Grimaldi's account since his untimely death."  (Doc. 1-1 ¶ 27.)  Plaintiff specifically identifies § 201-2(4)(ii), (vii), (xiv), (xxi) and relates certain conduct attributed to Defendant to each identified subsection.  (Doc. 1-1 ¶ 28.)

"[T]he UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices."  *Ash v. Continental Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007).  "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."  *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008).  In a private action, a plaintiff must show that she suffered "an ascertainable loss *as a result of* the defendant's prohibited action."  *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001).  Private actions are governed by 73 P.S.

9

§ 201-9.2 which requires that the ascertainable loss be of "money or property, real or personal." *See Weinberg*, 777 A.2d at 445 (quoting 73 P.S. § 201-9.2).

The allegations in Plaintiff's Complaint can be read to assert that Defendant's representation that Plaintiff was responsible for Mr. Grimaldi's account was a wrongful representation. Whether Plaintiff's Complaint can be read to assert that she justifiably relied on this representation and suffered harm as a result are different questions. Upon being informed of Plaintiff's alleged obligation, Plaintiff's daughter questioned Defendant's representation and requested proof of her alleged obligation. (Doc. 1-1 ¶¶ 9-10.) In her opposition brief Plaintiff does not specifically assert that the payment on Mr. Grimaldi's account which she made in February 2012 was made in reliance on Defendant's position that Plaintiff was responsible for the account. Rather, Plaintiff states that she made the payment "being overwhelmed by grief." (Doc. 1-1 ¶ 11.) We find a fair inference is made from this statement and from the averments in Plaintiff's Complaint that, although doubting her liability for her husband's account, Plaintiff made the February payment in reliance upon Defendant's representation. Further, we find this reliance could be deemed justified in that Defendant is a widely recognized financial institution, presumably in possession of documentation to support its assertion—something beyond the "screen shot of a data entry

10

screen showing, Plaintiff's name, but no signature" (Doc. 1-1 ¶ 22).  Finally, the "ascertainable loss" requirement would be met in that Plaintiff made a payment on the account for which she alleges she was not responsible.

Although not succinctly set out in Plaintiff's opposition to Defendant's motion (Doc. 11 at 3-7), we also conclude Plaintiff *may* also be able to show justifiable reliance in that she relied on Defendant's representation that Defendant would provide the requested documentation and the matter would be worked out.  (Doc. 1-1 ¶¶ 12, 15, 16.)  Plaintiff avers she did not pay the bills because Defendant had not followed through on its representations, she suffered harm as a result of not paying the disputed debt, and she continues to do so.  (Doc. 11 at 4-5.)  Plaintiff states the ascertainable loss "is the fact that this debt is unjustly reported to her credit report, as being paid late and *not* being reflected as contested on her credit report, thus not allowing her to use her credit in an emergency or to attempt to refinance her home."  (Doc. 11 at 4 (citing Doc. 1-1 ¶ 21).)

While we may agree with Defendant that harm to Plaintiff's credit rating and infringement on a hypothetical "attempt to refinance her home"  (Doc. 11 at 4) do not equate with an ascertainable loss of money or property for UTPCPL purposes, *see Weinberg*, 777 A.2d at 445, Defendant's closure of Plaintiff's independent line of credit in June of 2012 (Doc. 1-1 ¶ 21) is not

readily rejected as an "ascertainable loss." A line of credit is money to which the right of access has been determined; its closure deprives the person of that money.[1] Thus, we are not prepared to say (and Defendant has not argued) that closure of a line of credit is not an ascertainable loss of money or property.

With these findings, we conclude that, taking Plaintiff's allegations as true and making reasonable inferences in her favor, it is plausible that Plaintiff can show Defendant engaged in unfair business practices when it did not timely respond to Plaintiff's multiple requests for verification of her liability for the debt of her deceased husband, continued to demand payment despite its failure to provide the documentation (after reporting the matter was being looked into and should be resolved by a certain date), and took steps which harmed Plaintiff without responding to her initial request.

Finding two bases upon which Plaintiff *may* be able to show a violation of the UTPCPL, the claim properly goes forward. Therefore, Defendant's motion is denied as to Count I.

---

[1] Plaintiff's argument regarding her reliance on Defendant's allegations being the cause of her need to hire an attorney and incur the related legal fees and costs is a strained interpretation of applicable legal authority. (*See* Doc. 11 at 5.) This allegation is not that Plaintiff hired an attorney in reliance on the veracity of Defendant's representations; she hired an attorney because she did *not* believe Defendant's assertions and did not believe that she was obligated to act in conformity with them. More properly considered as damages associated with her UTPCPL claim, this aspect of Plaintiff's claim would not support her UTPCPL cause of action in Count I.

12

## 2.    Count IV - Fair Credit Extension Uniformity Act ("FCEUA")

Defendant maintains that Count IV, Plaintiff's claim under the **FCEUA** fails because the FCEUA does not provide for a private right of action; it only provides that a violation of the FCEUA is a violation of the UTPCPL. (Doc. 8 at 5.)  In its reply brief, Defendant cites *Benner v. Bank of America, N.A.*, —--F. Supp. 2d---, Civ. A. No. 11-6574, 2013 WL 85913, at *16 (E.D. Pa. Jan. 7, 2013), in support of its argument that Plaintiff's FCEUA claim must be dismissed.  (Doc. 12 at 2-3.)  *Benner* states the following in relevant part:

> A violation of the FCEUA "shall constitute a violation of the . . . Unfair Trade Practices and Consumer Protection Law ("UTPCPL")." [73 Pa. C.S.] § 2270.5(a). Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. [C.S.] § 201-9.2, the remedial provision of the UTPCPL, to obtain relief.  Therefore, the law governing UTPCPL claims also governs Plaintiff's FCEUA claim in this case.

2013 WL 85913, at *16.

Defendant argues that Plaintiff cannot base her FCEUA claim on a violation of the UTPCPL because she cannot sustain her UTPCPL claim.  (Doc. 12 at 3.)  This argument is undermined by our conclusion that Plaintiff's UTPCPL claim goes forward.  Because the UTPCPL claim goes forward, we will not dismiss Plaintiff's FCEUA claim at this stage of the proceedings.

13

### 3.   Count II - Fraud

Defendant asserts that Plaintiff's claim for fraud fails because it is insufficiently pled.  (Doc. 8 at 5.)  We disagree.

Under Pennsylvania law, the elements of fraudulent misrepresentation (sometimes referred to as intentional misrepresentation, *Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 804-05 (E.D. Pa. 2011)) are:

> (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Weston v. Northampton Personal Care, Inc.*, —--A.3d—--, No. 2473 EDA 2011, 2013 WL 47401, at *9-10 (Pa. Super. Jan. 25, 2013) (citing *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1250-51 (Pa. Super. 2002)).  *Weston* adds that "[s]cienter, or the maker's knowledge of the untrue character of his representation, is a key element in finding fraudulent misrepresentation."  2013 WL 47401, at *10 (citing Restatment (Second) of Torts § 526, Comment a).

As set out above, the federal pleading standard for fraud is found in Federal Rule of Civil Procedure 9(b): "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

14

other conditions of a person's mind may be alleged generally."

Defendant argues that Plaintiff's fraud claim must be dismissed because Count II of Plaintiff's Complaint fails to satisfy the requisite pleading standards. (Doc. 8 at 6.) Defendant asserts that "Plaintiff's conclusory statements do not suffice under Rule 9(b) or *Iqbal*. The best the Complaint can do is to allege that Defendant 'omitted necessary documentation to prove Plaintiff has personal liability for the disputed debt.'" (Doc. 8 at 6-7 (citing Doc. 1-1 ¶ 33).) Characterizing Plaintiff's fraud claim as one based on an alleged "lie by omission," Defendant maintains the allegation falls "woefully short" of the pleading standard for fraud. (Doc. 8 at 7.)

Defendant also avers in its reply brief that the general response to its argument in Plaintiff's responsive brief is inadequate and does not require further argument. (Doc. 12 at 3.)

We do not condone Plaintiff's vague response to Defendant's argument. (Doc. 11 at 7-8.) Nor do we find the pleading to be a model of clarity. However, keeping in mind it is Defendant's burden to show that no claim has been presented, *Hedges*, 404 F.3d at 750, we conclude Defendant has not met its burden of showing it is entitled to dismissal of Plaintiff's fraud claim. Defendant's assertion that "[t]he best the Complaint can do is to allege that Defendant 'omitted necessary documentation to prove Plaintiff has personal liability for the disputed debt'" (Doc. 8 at 6-7 (citing

15

Doc. 1-1 ¶ 33)) does not accurately represent the allegations contained in Plaintiff's Complaint.  (Doc. 1-1.)  The cited material not only asserts that Defendant "omitted" documentation, it states "Defendant *intentionally misrepresented and/or* omitted necessary documentation to prove Plaintiff has personal liability for the disputed debt.'"  (Doc. 1-1 ¶ 33) (emphasis added).)  Thus, Defendant's contention that Plaintiff's claim rests on an alleged "lie by omission" is not an accurate portrayal of the claim set out in Plaintiff's Complaint.  Therefore, Defendant has failed to meet its burden of showing that no claim has been presented, *Hedges*, 404 F.3d at 750, and its motion to dismiss the fraud claim is denied.

**4.   Count VI - Negligent Misrepresentation**

Defendant asserts that Plaintiff's claim for negligent misrepresentation fails because, as is the case for her fraud claim, it is insufficiently pled and, additionally, Plaintiff does not identify a legal duty owed by Defendant to Plaintiff, a necessary element of a negligent misrepresentation claim.  (Doc. 8 at 7.)  We agree in part.

The Pennsylvania Superior Court recently discussed the requirements of a claim for negligent misrepresentation in *Miliken v. Jacono*, —-A.3d---, No. 2731 EDA 2010, 2012 WL 6684757, at *7 (Pa. Super. Dec. 12, 2012).

> Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its

16

falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. *Moreover, like any action in negligence, there must be a duty owed by one party to another.*

*Id.* (quoting *Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1252 (Pa. Super. 2002)).

Based on our conclusion that Defendant has not met its burden of showing that no fraud claim has been presented, Defendant's assertion that Plaintiff's negligent misrepresentation claim must be dismissed for the same reason (Doc. 8 at 7) does not present a basis for dismissal. However, we agree with Defendant's assertion that the Complaint does not cite to any duty of care owed to Plaintiff by Defendant and, therefore, Plaintiff fails to state a claim for negligent misrepresentation. (Doc. 8 at 7-8.)

Defendant does not address the issue of whether Plaintiff should be granted leave to amend this claim. Because a duty between a lender and borrower may arise in certain circumstances, *see, e.g.*, *Schnell*, 828 F. Supp. 2d at 806; *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 783 (E.D. Pa. 2008), and because Defendant has not specifically addressed the amendment issue, we will allow Plaintiff leave to amend her claim for negligent

misrepresentation. With this conclusion, we make no determination on whether Plaintiff can satisfy the limited circumstances giving rise to a duty between a lender and borrower.

**5.   Count III - Breach of Implied Covenant of Good Faith and Fair Dealing**

Defendant asserts that Plaintiff's claim for Breach of Implied Covenant of Good Faith and Fair Dealing fails because Pennsylvania does not recognize this cause of action separate and apart from a claim for breach of contract. (Doc. 8 at 8.) We agree.

Defendant points to multiple cases in which the Third Circuit and district courts within the Third Circuit have held that Pennsylvania does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing. (Doc. 8 at 8-9 (citing *Morgan Truck Body, LLC v. Integrated Logistics Solutions, LLC*, Civ. A. No. 07-1225, 2008 WL 746827 (E.D. Pa. Mar. 20, 2008); *Lyon Financial Services, Inc. v. Woodlake Imaging, LLC*, Civ. A. No. 04-CV-3334, 2005 WL 331695, at *21 (Feb. 9, 2005); *Nationwide Ins. Independent Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, Civ. A. No. 11-3085, 2012 WL 1524381, at *6 (E.D. Pa. May 1, 2012); *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000)).)

Plaintiff cites no authority which supports the proposition that a breach of an implied covenant of good faith and fair dealing can be maintained independent of a contract action. The cases she cites in support of her position do not do so. (Doc. 11 at 8-9

18

(citing *Academy Industries, Inc. v. PNC Bank, N.A.*, Nos. 2383, 0634, 2002 WL 1472342 (Pa. Com. Pl. May 20, 2002); *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. 2002)).) *Academy Industries* confirms that a claim for a breach of an implied covenant of good faith is to be prosecuted as a breach of contract claim. 2002 WL 1472342, at *6. We find no support for an independent breach on an implied covenant of good faith in *eToll* and Plaintiff's vague reference to an agency relationship (Doc. 11 at 9) does not bolster her position.

Thus, Count III, framed as an independent "Breach of Implied Covenant of Good Faith and Fair Dealing, is properly dismissed. Because such a claim is not properly brought independent of a breach of contract action, leave to amend this claim would be futile.

## 6. <u>Count V</u> – Fair Debt Collection Practices Act ("FDCPA")

Defendant asserts that Plaintiff's FDCPA claim fails because the FDCPA is only applicable to debt collectors and Defendant is not a debt collector as that term is defined in the FDCPA. (Doc. 8 at 9-10.) We agree.

The FDCPA is a "remedial statute [which] 'prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices.'" *Venner v. Bank of America*, 387 F. App'x 232, 236 (3d Cir. 2010) (not precedential) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). The FDCPA

19

defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Specifically excluded from the term "debt collector" is "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A).

Although Plaintiff states in a conclusory fashion that Count V should stand, Plaintiff does not refute that the FDCPA applies only to debt collectors and Defendant does not fall under the applicable definition. (Doc. 11 at 9-10.) Given the absence of any argument that Defendant falls under the definition of debt collector in the context of this case, Plaintiff's FDCPA claim is properly dismissed. Because here Defendant was a creditor collecting debts for itself, it does not fall under the definition of "debt collector" in the FDCPA and amendment of this claim would be futile.

7. **Count VII - Negligent Infliction of Emotional Distress**

Defendant maintains that Plaintiff's negligent infliction of emotional distress ("NIED") claim fails under any theory of recovery recognized in Pennsylvania. (Doc. 8 at 10.) We agree.

Pennsylvania recognizes four factual scenarios which may

support a claim for negligent infliction of emotional distress:

> "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."

*Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 217 (Pa. Super. 2012) (quoting *Toney v. Chester County Hosp.*, 961 A.2d 192, 198 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011)).

Here the only possible theory Plaintiff could proceed under is the first, a theory explained by the Supreme Court of Pennsylvania as follows:

> [I]f an actor has a particular contractual or fiduciary relationship with a victim and it is foreseeable that the actor's carelessness could cause severe emotional harm to the victim, and that harm occurs, a cognizable tort arises which is, in short-form referred to as a breach of a "contractual or fiduciary duty" not to inflict foreseeable emotional distress upon a victim.

*Toney v. Chester County Hosp.*, 36 A.3d 83, 85 n.1 (Pa. 2011).

*Toney* further explained that the reach of this cause of action is limited to

> preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach. . . . [T]he special relationships must encompass an implied duty to care for the plaintiff's emotional well-being. . . . Compensable emotional harm has been described as likely to be experienced as a visceral and devastating assault on the self such that it

21

> resembles physical agony in its brutality. .
> . . . [R]elationships involving life and death
> fall within this category. . . . It is
> impossible . . . to create an exhaustive list
> of qualifying relationships in this opinion.
> . . . Nonetheless, we would hold that some
> relationships, including some doctor-patient
> relationships, will involve an implied duty
> to care for the plaintiff's emotional well-
> being that, if breached, has the potential to
> cause emotional distress resulting in
> physical harm.

*Toney*, 36 A.3d at 95 (internal quotations and citation omitted).[2]

Defendant maintains that Plaintiff cannot succeed on this NIED theory because the relationship between a lender and borrower does not qualify as a "special relationship" and Plaintiff cannot identify a preexisting legal duty of care that was breached by Defendant. (Doc. 8 at 11.) Defendant adds that Plaintiff does not set out that she suffered severe emotional distress. (Doc. 8 at 11.)

Plaintiff again relies on *eToll* in support of her assertion that a fiduciary relationship existed between herself and Defendant. (Doc. 11 at 10.)

Just as we found Plaintiff's vague reference to *eToll* failed

---

[2]   *Toney* notes that a trial court should consider the standard five-factor test in deciding whether imposition of a duty is appropriate.  36 F.3d at 95 n.11.  The following factors are to be weighed: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."  *Id.* (citing *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 281 (Pa. 2005)).

to support her claim for breach of the implied covenant of good faith and fair dealing, her argument here is similarly unavailing. This is particularly so in light of Plaintiff's obligation to point to a special relationship which would satisfy the stringent requirements identified by Pennsylvania courts: a relationship "involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach . . . [which] must encompass an implied duty to care for the plaintiff's emotional well-being." *Toney*, 36 A.3d at 95. The lender-borrower relationship holds no such implied duty. Therefore, the relationship between Plaintiff and Defendant cannot support a negligent infliction of emotional distress claim, and this claim is properly dismissed. The basis for the dismissal also leads the Court to conclude that allowing Plaintiff leave to amend this claim would be futile.

**8.  Punitive Damages**

Finally, Defendant contends that, should Plaintiff seek punitive damages, nothing substantiates a claim that Defendant's conduct rises to the requisite level. (Doc. 8 at 13.) In her responsive brief, Plaintiff clarifies that she has not alleged she is seeking punitive damages.

### III. Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 7) is granted in part and denied in

part.  The Motion is granted insofar as the following claims are dismissed with prejudice:  Breach of Implied Covenant of Good Faith and Fair Dealing (Count III), Fair Debt Collection Practices Act (Count V), and Negligent Infliction of Emotional Distress (Count VII).  The Motion is granted insofar as Plaintiff's claim for Negligent Misrepresentation (Count VI) is dismissed without prejudice.  Defendant's motion is denied as to the following claims: Unfair Trade Practices and Consumer Protection Law (Count I), Fraud (Count II), and Fair Debt Extension Uniformity Act (Count IV).  Plaintiff is granted leave to amend her Complaint only as to Count VI for Negligent Misrepresentation.  An appropriate Order is issued contemporaneously with this Memorandum.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge


DATED: March 14, 2014 _____

24